Filed 10/24/14  P. v. Leonard CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

| | |
|---|---|
| THE PEOPLE, | C074430 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF13-84) |
| v. | |
| MICHAEL LEE LEONARD, | |
| Defendant and Appellant. | |

A jury convicted defendant Michael Lee Leonard of battery causing serious bodily injury (Pen. Code, § 243, subd. (d); count 1),[1] willfully resisting, delaying, or obstructing a peace officer, a misdemeanor (§ 148, subd. (a)(1); count 2), and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 3).  In connection with counts 1 and 3, the jury found that defendant personally inflicted great bodily injury. (§ 1192.7, subd. (c)(8) [count 1], § 12022.7, subd. (a) [count 3].)  In bifurcated proceedings, defendant admitted a strike prior (§§ 667, subds. (b)-(i), 1170.12 [1995

[1]  Undesignated statutory references are to the Penal Code.

1

robbery]), a prior felony conviction (§ 667, subd. (a)) and four prior prison terms (§ 667.5, subd. (b)).

Sentenced to state prison, defendant appeals contending the trial court abused its discretion and violated his due process and fair trial rights in allowing his impeachment with several prior felony and misdemeanor convictions. Defendant also contends counsel rendered ineffective assistance in failing to object on hearsay grounds to the prosecutor's questioning of defendant about the misdemeanor convictions. Defendant further contends counsel rendered ineffective assistance in failing to cross-examine the victim adequately concerning his level of intoxication and in failing to present expert testimony on the same. We will affirm the judgment.

FACTS

About 2:00 p.m. on February 5, 2013, at the corner of 10th and G Streets in Marysville, defendant punched 51-year-old Bradley Kirkegaard, rendering him unconscious. Defendant then fled the scene. An officer saw defendant a few blocks from the scene and ordered him to stop several times. Defendant fled from the officer and jumped over a fence. Officers found defendant hiding in a locked fenced yard.

The victim was transported to the hospital. He suffered a broken nose and facial lacerations which required stitches.

At trial, the victim testified he had never seen defendant before, did not know who he was, and did not converse with him. The victim felt the blow without warning. The victim admitted he had been drinking, having had four or five beers that day, but claimed he was not drunk. His blood-alcohol content at the hospital was 0.18 percent.

Two eyewitnesses who saw defendant punch the victim testified at trial. John Wilhelm was a passenger in a car driven by his spouse Jill Wilhelm.[2] They were stopped

_____

[2] We will use their first names to avoid confusion; no disrespect is intended.

2

at a light on 10th Street preparing to turn left onto G Street. They were behind three cars. According to the officer who responded to the scene, the Wilhelm's location was about 120 feet from the scene. John saw defendant "sucker punch" the victim without "rhyme or reason." On cross-examination, John testified it looked like the two were leaning on a light pole and could have been talking.

Jill testified that as she was driving that day, John exclaimed, "That guy just sucker punched that other guy." Jill did not see the blow but called 911 because she saw defendant fleeing from the scene.

Wade Horton saw the punch as well. Horton was on 10th Street waiting for the light to turn green so he could turn left onto G Street. He was a couple of car lengths away, about 80 feet, from the scene. Horton observed defendant standing to the right and slightly behind the victim, "bouncing left to right, acting kind of agitated" before he hit the victim. Horton did not see the two conversing before the punch. Horton testified defendant "sucker punch[ed]" the victim who was completely defenseless. Defendant threw an "overhand right," hitting the victim square in the face.

The 44-year-old defendant testified. Defendant claimed the victim, who was drunk and smelled like alcohol, leaned or lunged into defendant, punching him "in the nuts." Defendant admitted hitting the victim, claiming he did so in self-defense.

Two character witnesses testified for defendant. Dianna Burke-Knapp had seen defendant casually a couple of times a year for nine years and about once a week in the previous eight months. She opined that defendant was a "gentle spirit and very kind" who had never been violent in her presence. She believed he had to have been provoked in the current incident. He had written to her to explain his version of the incident. She had seen him provoked previously where he did not respond with anger. Defendant's prior convictions did not change her opinion of him.

Darren Brenegan, defendant's cousin, testified that he had grown up with defendant. Brenegan claimed that defendant's father was a "mean drunk" and that

3

defendant "need[ed] help." Brenegan had never seen defendant violent but was aware of his prior convictions. Brenegan believed that defendant had to have been provoked in the current incident. Defendant had told his version of the incident to Brenegan when he visited defendant in jail. Brenegan had told a defense investigator that defendant was a different person when he used drugs and alcohol which he used to suppress what happened to him in his childhood.

Additional facts will be recounted in our discussion of defendant's contentions.

DISCUSSION

I

Defendant contends the trial court abused its discretion and violated his due process and fair trial rights in allowing his impeachment with several prior felony and misdemeanor convictions. Specifically, defendant claims for the first time on appeal that his 1995 felony convictions for robbery and obstructing an officer with force or violence were remote, were "not helpful in evaluating" his veracity, and should have been sanitized. He claims counsel's performance was deficient in failing to so object and for failing to object to all five prior felony convictions as well as a misdemeanor that defendant admitted was a felony (petty theft with a prior). Defendant also contends his misdemeanor convictions are inadmissible hearsay and claims defense counsel rendered ineffective assistance in failing to object on that ground. We conclude any error was harmless.

**Background**

Prior to defendant testifying at the first trial, the prosecutor sought to impeach defendant with the following five prior felony convictions: robbery (1995); obstructing an executive officer with force or violence (1995); false impersonation (2001); second degree burglary (2004); and vehicle theft (2008). The prosecutor detailed defendant's criminal history which included additional misdemeanor convictions, time spent in custody, and violations of probation and parole, reflecting repeated unlawful conduct

4

since defendant's first conviction in 1995. The court ruled the felony prior convictions were admissible to impeach defendant should he testify, commenting that defendant had not lived a "blameless life" and noting defendant's "consistent contact" with "the criminal justice system" since 1995. The trial court found the felony convictions were crimes of moral turpitude and extremely probative and relevant if defendant testified.

The prosecutor also proposed questioning defendant about his prior misdemeanor conduct in resisting a peace officer. The court queried whether the offense was a crime of moral turpitude. The prosecutor decided not to pursue it.

The first trial ended prior to the defense case. The trial court granted defendant's mistrial motion after several jurors were excused and there were not enough alternates.

At the beginning of the second trial, the court stated that its prior rulings stood which included allowing impeachment of the victim and defendant.[3] Defendant could be impeached with his five prior felony convictions. On direct examination, defense counsel did not ask defendant about his prior felony convictions. Outside the presence of the jury and prior to cross-examining defendant, the prosecutor (who was a different one than at the first trial) sought to impeach defendant further with his prior misdemeanor convictions: petty theft (1987, 1988); petty theft with a prior (1987); false information to a peace officer (2002, 2007); resisting a peace officer (2011); and domestic violence (battery) (2012).

---

[3] At the first trial, the *victim* was asked about his prior misdemeanor and felony convictions pursuant to a stipulation between the parties. At the beginning of the second trial with a different prosecutor, the stipulation "fell apart." The trial court ruled the misdemeanor and felony convictions were admissible for impeachment of the victim. When the victim testified at the second trial, the prosecutor asked and the victim confirmed that he had been convicted of sexual battery, a misdemeanor (1990), contributing to the delinquency of a minor, a misdemeanor (three times in 1990), driving under the influence, a felony (1991, 2000, 2003, & again in 2010), and being a convicted felon in possession of a firearm, a felony (1996). The victim stated that he was not proud of any of his convictions.

Having reviewed defendant's record, defense counsel objected to defendant's impeachment with the resisting offense as more prejudicial (Evid. Code, § 352) since defendant was on trial for the same offense. The court excluded the prior misdemeanor conviction for resisting but ruled all the other misdemeanor convictions were admissible. Defense counsel was allowed to reopen and asked defendant about his prior felony convictions which defendant admitted. Defense counsel did not ask defendant about his misdemeanor conduct.

On cross-examination of defendant, the prosecutor also asked about the five prior felony convictions, as well as the misdemeanor convictions *except* the prior misdemeanor resisting. Defendant admitted the prior misdemeanor convictions and agreed that the petty theft with a prior was probably a felony conviction. The prosecutor did not ask defendant about the underlying facts of the misdemeanor offenses--he simply asked defendant whether he had been convicted of each offense, as he had asked about the felony convictions. Defense counsel did not object to the prosecutor's questions about misdemeanor convictions rather than the misdemeanor conduct underlying those convictions.

**Analysis**

Since defendant did not object below as now claimed on appeal, we consider defendant's claims as a challenge to defense counsel's performance. To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that defendant suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-689, 691-695 [80 L.Ed.2d 674, 693-694, 696-698] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218 (*Ledesma*).) To demonstrate deficient performance, the defendant "must affirmatively show counsel's deficiency involved a crucial issue and cannot be explained on the basis of any knowledgeable choice of tactics." (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147.) To demonstrate prejudice, "[t]he defendant must show that there is a

6

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland,* at p. 694; see also *Ledesma*, at pp. 217-218.) If defendant fails to show the challenged actions affected the reliability of the trial process, we may reject a claim of ineffective assistance of counsel without deciding whether counsel's performance was deficient. (*Strickland*, at p. 697; *People v. Kipp* (1998) 18 Cal.4th 349, 366.) We conclude defendant has failed to show deficient performance and/or prejudice.

Subject to the court's discretion (Evid. Code, § 352), "any felony conviction which necessarily involves moral turpitude [may be used for impeachment], even if the immoral trait is one other than dishonesty." (*People v. Castro* (1985) 38 Cal.3d 301, 306 (*Castro*); *People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).) A prior felony conviction is "admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*Castro,* at p. 317.) "Moral turpitude" has been defined as a " 'readiness to do evil,' " and "moral depravity" (*id*. at pp. 314-315) and " 'includes conduct involving violence, menace, or threat.' " (*People v. Williams* (1999) 72 Cal.App.4th 1460, 1464 (*Williams*).) A felony conviction showing a general readiness to do evil supports an inference of a readiness to lie. (*Castro,* at p. 314.) "[I]t is undeniable that a witness' moral depravity of any kind has some 'tendency in reason' (Evid. Code, § 210) to shake one's confidence in his honesty." (*Id.* at p. 315.)

The trial court's exercise of discretion will not be disturbed on appeal unless the court exceeded the bounds of reason and the resulting harm constitutes a miscarriage of justice. (*People v. Green* (1995) 34 Cal.App.4th 165, 182-183 (*Green*).) In exercising its discretion, a trial court "should consider, among other factors, whether [the conviction] reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*Clark, supra,* 52 Cal.4th at p. 931.)

7

Prejudice may be alleviated by "sanitiz[ing]" the prior felony conviction; the jury is told about the fact of, but not the nature of, the prior conviction. (*People v. Sandoval* (1992) 4 Cal.4th 155, 178.) Sanitizing a prior conviction renders prejudice less likely, "notwithstanding the possibility of jury speculation." (*People v. Massey* (1987) 192 Cal.App.3d 819, 825.)

Although the identity of the prior convictions to the current charges is to be considered by the trial court, such identity does not preclude use of those priors because "[n]o witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. The general rule is that felony convictions bearing on veracity are admissible." (*People v. Beagle* (1972) 6 Cal.3d 441, 453.) The trial court has discretion to allow use of prior convictions identical to the current charges when other factors weigh in favor of admission. (*Green, supra,* 34 Cal.App.4th at p. 183; *People v. Muldrow* (1988) 202 Cal.App.3d 636, 646-647 (*Muldrow*).)

"There is no automatic limitation on the number of priors admissible for impeachment" and whether more than one should be admitted is just one factor the trial court considers in weighing prejudice. (*People v. Dillingham* (1986) 186 Cal.App.3d 688, 695.)

Here, defendant claims defense counsel should have objected to the admission of five prior felony convictions and especially his prior robbery and obstructing offenses which involved violence. A prior robbery conviction is probative of a defendant's veracity. (*Clark, supra,* 52 Cal.4th at p. 932.) Obstructing an officer in violation of section 69 is a crime of moral turpitude since it involves force, menace, or threats. (*Williams, supra,* 72 Cal.App.4th at p. 1464.) As the trial court stated, defendant has not led a legally blameless life since committing the 1995 offenses; thus, his prior convictions were not so remote as to preclude their relevance for impeachment. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1055-1056 (*Carpenter*) [17-year-old conviction not too remote]; *Green, supra*, 34 Cal.App.4th at p. 183 [20-year-old

8

conviction not too remote]; *Muldrow, supra*, 202 Cal.App.3d at pp. 647-648 [20-year-old conviction not too remote].) That defendant had five prior felony convictions was just one factor for the trial court to consider. (See *People v. Mendoza* (2000) 78 Cal.App.4th 918, 927 [10 priors admitted for impeachment].) Defendant testified knowing that he would be impeached with his convictions. This further supports the trial court's decision to admit the evidence. (*Carpenter, supra*, 21 Cal.4th at p. 1056; *People v. Clarida* (1987) 197 Cal.App.3d 547, 554.)

Since the 1995 felony convictions reflected adversely on defendant's veracity, defendant had not led a blameless life since, and the admission of the five prior felony convictions was not a deterrence to defendant testifying, we conclude that counsel's performance was not deficient in failing to object as now claimed on appeal and the trial court did not abuse its discretion in permitting defendant's credibility to be impeached with his felony convictions. Even assuming defense counsel should have requested that the court sanitize the 1995 offenses, defendant has failed to show prejudice. (*Strickland, supra,* 466 U.S. at p. 694; *Ledesma, supra,* 43 Cal.3d at pp. 217-218.) The court instructed the jury that defendant's prior convictions could be used only in assessing his credibility. It is not reasonably probable that the verdict would have been different had the now-challenged prior convictions been "sanitized" to delete any reference to the nature of the offenses. (*People v. Clark* (1996) 45 Cal.App.4th 1147, 1158.)

Defendant claims counsel rendered ineffective assistance in failing to object to the admission of defendant's misdemeanor convictions. *People v. Wheeler* (1992) 4 Cal.4th 284 held that a misdemeanor conviction itself when offered for impeachment is hearsay not within any exception (*id.* at pp. 297-300) but past misdemeanor conduct showing moral turpitude may be admissible. (*Id.* at pp. 290-295.) *Wheeler* explained, "Our holding is a narrow one, confined to the specific issue whether under current law a misdemeanor conviction is admissible as direct evidence of criminal conduct. Nothing in the hearsay rule precludes proof of impeaching misdemeanor misconduct by other, more

9

direct means, including a witness's admission on direct or cross-examination that he or she committed such conduct." (*Id.* at p. 300, fn. 14, italics omitted.)

Evidence Code section 452.5 created the hearsay exception which allows a trial court to take judicial notice of certain records. (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1460.) Here, however, the prosecutor did not use records of defendant's misdemeanor convictions. The *Wheeler* exception for admission of misdemeanor conduct on cross-examination does not apply because defendant admitted only his convictions and was not asked about the underlying conduct. This was improper impeachment under *Wheeler* because it did not go to the conduct underlying the conviction.

Defense counsel reasonably made a tactical decision not to object to the misdemeanor convictions (other than the misdemeanor resisting offense as similar to one of the current charges) in order to avoid more damaging information being elicited about the misdemeanor conduct.[4] Even had defense counsel objected to the domestic violence misdemeanor conduct, it too showed moral depravity and was admissible.

Even assuming counsel's performance was deficient in failing to object, any error in the admission of defendant's prior misdemeanor convictions for impeachment was harmless because such evidence was merely cumulative to the properly admitted prior felony convictions. It is not reasonably probable that defendant would have obtained a more favorable result had his prior misdemeanor convictions been excluded from evidence. (*Strickland, supra,* 466 U.S. at p. 694; *Ledesma, supra,* 43 Cal.3d at pp. 217-

---

[4] In his reply brief, defendant misrepresents that the resisting misdemeanor was not excluded. He is wrong. Defense counsel objected to the resisting misdemeanor, the trial court excluded it, and the prosecutor did not ask defendant about it. The prosecutor did ask about defendant's *felony* conviction for "resisting a peace officer [obstructing an executive officer] with force."

218.)  Based on the foregoing discussion, we find no due process or fair trial rights violation.

## II

Defendant contends counsel rendered ineffective assistance in cross-examining the victim and in failing to present defense expert testimony on the meaning and extent of the victim's impairment.  Defendant claims counsel did not adequately cross-examine the victim, having only asked about drinking the day of his court testimony which the victim denied and whether he recalled going to his knees after he was hit which the victim remembered.  Defendant complains that counsel did not ask about the size, brand, and alcohol content of the beer the victim consumed, the time of day he had been drinking, or how fast he drank the beers, and did not explore the inconsistency between the number of beers the victim claimed he drank and his blood-alcohol content.  Defendant also complains that counsel did not present evidence through an expert about the victim's impairment.  Defendant speculates that the victim was a tolerant drinker and his blood-alcohol content at the scene was 0.24 percent.

Although the victim claimed he had only four or five beers that day, his blood-alcohol content at the hospital was 0.18 percent.  The jury knew all about the victim's prior DUI (driving under the influence) convictions.  The evidence already suggested the victim was highly intoxicated.  Defense counsel made a rational tactical decision not to focus on the victim's vulnerability due to his impairment in order to present defendant's claim of self-defense (an action of a reasonable person in the same circumstances).  Had it been established that the victim was falling down drunk and needed assistance to walk or stand up rather than a punch in the face, defendant's claim of self-defense would have been even more unlikely.

Even assuming counsel's performance was deficient in cross-examining the victim and in failing to introduce expert testimony, defendant cannot show prejudice.  Defendant claimed self-defense but his defense would have been rejected and the outcome would

11

have been the same even with the asserted cross-examination and expert testimony in view of the victim's testimony that he did nothing to provoke the attack, the testimony of two impartial eyewitnesses (John Wilhelm and Wade Horton) who described defendant's attack as a "sucker punch" to the victim who was defenseless, defendant's flight after the attack, and defendant's lack of credibility in view of all his prior felony convictions. (*Strickland, supra,* 466 U.S. at p. 694; *Ledesma, supra,* 43 Cal.3d at pp. 217-218.)  We reject defendant's claim of ineffective assistance of counsel.

DISPOSITION

The judgment is affirmed.

           BLEASE           , Acting P. J.

We concur:

      NICHOLSON      , J.

      MAURO        , J.