[Crim. No. 14911. Third Dist. Mar. 23, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DEWAYNE LOGAN, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to Rule 976.1 of the California Rules of Court, the Reporter of Decisions is directed to publish all portions of this opinion, including the Disposition, with the exception of part II.

600

**COUNSEL**

Phillip I. Bronson, under appointment by the Court of Appeal, and DeWayne Logan, in pro. per., for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edmund D. McMurray and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

SIMS, J.—A jury convicted defendant DeWayne Logan of assault with a deadly weapon (Pen. Code, § 245, subd. (a))[1] and found that in the commission of that offense he personally used a firearm (§ 12022.5) and inflicted

---

[1]Statutory references are to the Penal Code unless otherwise indicated.

great bodily injury (§ 12022.7). The jury also convicted defendant of possession by an ex-felon of a firearm (§ 12021). The trial court found defendant a habitual criminal within the meaning of section 667.7 and sentenced him to life imprisonment with parole precluded for 20 years.

Defendant makes a series of challenges to his current convictions which we reject in an unpublished portion of this opinion. In this published portion, we consider defendant's contention he was improperly adjudicated a habitual criminal within the meaning of section 667.7. For reasons which follow, we conclude this contention has merit.

PROCEDURAL BACKGROUND AND FACTS RELEVANT TO THE HABITUAL CRIMINAL FINDING

As pertinent here, section 667.7 provides for increased punishment for defendants who have served two or more prior separate prison terms for certain offenses and who are then convicted of a felony in which they have inflicted great bodily injury (§ 12022.7).[2]

---

[2]Section 667.7 provides: "Any person convicted of a felony in which such person inflicted great bodily injury as provided in Section 12022.7, or personally used force which was likely to produce great bodily injury, who has served two or more prior separate prison terms as defined in Section 667.5 for the crime of murder; attempted murder, voluntary manslaughter; mayhem; rape by force, violence, or fear of immediate and unlawful bodily injury on the victim or another person; oral copulation by force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person; sodomy by force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person; lewd acts on a child under the age of 14 years by use of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person; a violation of subdivision (a) of Section 289 where the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person; kidnapping for ransom, extortion, or robbery; robbery involving the use of force or a deadly weapon; assault with intent to commit murder; assault with a deadly weapon; assault with a force likely to produce great bodily injury; assault with intent to commit rape, sodomy, oral copulation, penetration of a vaginal or anal opening in violation of Section 289, or lewd and lascivious acts on a child; arson of a structure; escape or attempted escape by an inmate with force or violence in violation of subdivision (a) of Section 4530, or of Section 4532; exploding a device with intent to murder in violation of Section 12308; exploding a destructive device which causes bodily injury in violation of Section 12309, or mayhem or great bodily injury in violation of Section 12310; exploding a destructive device with intent to injure, intimidate, or terrify, in violation of Section 12303.3; any felony in which such person inflicted great bodily injury as provided in Section 12022.7; or any felony punishable by death or life imprisonment with or without the possibility of parole is a habitual offender shall be punished as follows:

"(1) Such person who served two prior separate prison terms shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole for 20 years, or the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046, whichever is greatest. The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part

Here, the jury convicted defendant of a felony in which he inflicted great bodily injury. Defendant's habitual criminal status thus depended on whether he had served two prior separate prison terms described by the statute. The information alleged one separate prison term arising out of defendant's conviction for robbery on January 13, 1975, where it was found defendant had personally used a firearm (§ 12022.5). The second separate prison term was alleged to have arisen out of defendant's conviction for robbery on June 18, 1980, where it was found defendant was armed with a firearm (§ 12022, subd. (a)).

The question whether defendant had served the requisite prior prison terms was adjudicated in a court trial following the discharge of the jury. The only evidence received by the court came in the form of defendant's admissions that he had served the prison terms alleged in the information. Defendant merely admitted the fact of his prior service of the terms; he refused to admit (and expressly reserved for appeal) that the prior terms met the statutory criteria for habitual criminal status under section 667.7. (See *People* v. *Calio* (1986) 42 Cal.3d 639, 643 [230 Cal.Rptr. 137, 724 P.2d 1162].) The People presented no additional evidence. ·

The trial court found that defendant was a habitual criminal within the meaning of section 667.7.

DISCUSSION

I

*Defendant's habitual criminal adjudication must be reversed because he has not suffered two prior separate prison terms for robbery involving the use of force or the use of a deadly weapon.*

Defendant contends his admission that he served a separate prison term for a robbery in which he was *armed with* a firearm (§ 12022, subd. (a))

---

3 shall apply to reduce any minimum term in a state prison imposed pursuant to this section, but such person shall not otherwise be released on parole prior to such time.

"(2) Any person convicted of such a felony who has served three or more prior separate prison terms, as defined in Section 667.5, for the crimes specified in subdivision (a) shall be punished by imprisonment in the state prison for life without the possibility of parole.

"(b) This section shall not prevent the imposition of the punishment of death or imprisonment for life without the possibility of parole. No prior prison term shall be used for this determination which was served prior to a period of 10 years in which the person remained free of both prison custody and the commission of an offense which results in a felony conviction. As used in this section, a commitment to the Department of the Youth Authority after conviction for a felony shall constitute a prior prison term. The term imposed under this section shall be imposed only if the prior prison terms are alleged under this section in the accusatory pleading, and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by a plea of guilty or nolo contendere or by a trial by the court sitting without a jury."

is insufficient to establish one of the two requisite prison terms under section 667.7. For the reasons which follow, we agree.

 Section 667.7 provides in pertinent part that "Any person . . . who has served two or more prior separate prison terms as defined in Section 667.5 for the crime of . . . *robbery involving the use of force or a deadly weapon*; . . . is a habitual offender . . . ."[3] (Italics added.)

██ Defendant contends that, in order to be adjudged a habitual criminal within the meaning of section 667.7, the People had to show that *both* prior prison terms were for robberies involving *the use of* a deadly weapon.[4] The People counter by suggesting they need only show that both robberies were "robber[ies] *involving* . . . a deadly weapon." (Italics added.) Thus, the People contend that proof defendant was *armed with* a deadly weapon is sufficient to show that the robbery "involv[ed] . . . a deadly weapon."

We must reject the People's construction of section 667.7 for a variety of reasons. ██ The first is that the People's interpretation violates settled rules governing the interpretation of modifying phrases in statutes. "It is a general rule of statutory construction . . . that ' "modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to more remote phrases." [Citation.].' " (*People* v. *Corey* (1978) 21 Cal.3d 738, 742 [147 Cal.Rptr. 639, 581 P.2d 644], quoting *Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 399 [6 Cal.Rptr. 191].) Here, the term "deadly weapon" is preceded more closely by the term "use" than by the term "involving." Thus, the statute should be construed to refer to the "use" of a "deadly weapon" and not to any case "involving" a "deadly weapon."

██ The People's contention that section 667.7 applies to all robberies "involving . . . a deadly weapon" also runs afoul of the venerable rule that statutes must be construed in context. (*People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224].) Section 667.7 provides that its severe penalties shall attach to a list of offenses having in common an enhanced level of danger on the part of the perpetrator. Thus, most of the listed offenses must be accomplished by

---

[3]Section 667.7 is silent as to which party has the burden of proving that the defendant has suffered prior prison terms sufficient to bring him within the terms of the statute. Implicitly, where proof on the issue is required the People have the burden, as with enhancements premised on prior convictions. (See *People* v. *Coffey* (1967) 67 Cal.2d 204, 217 [60 Cal.Rptr. 457, 430 P.2d 15]; *People* v. *Morton* (1953) 41 Cal.2d 536, 539 [261 P.2d 523].)

[4]The People do not contend either prior robbery involved the use of force; thus, we do not consider section 667.7's provision on "robbery involving the use of force."

violence, menace, duress, or fear, or must cause or be intended to cause death or great bodily injury. The People's proposed construction would violate this coherent statutory scheme because the mere "involvement" of a deadly weapon divorced from its *use* has no necessary connotation of dangerousness.

Besides being out of context with its statutory counterparts, an enhancement for "robbery involving . . . a deadly weapon" would be of potentially unlimited application to obviously unintended sets of facts. For example, such an enhancement would literally apply to cases where deadly weapons such as knives or bows and arrows are stolen in a robbery accomplished by means of fear alone. We can think of no reason why the Legislature would have intended the serious penalties of section 667.7 to attach in such circumstances. ██ This court is obligated to construe statutes in a way that will lead to a wise policy rather than to mischief or absurdity. (*People v. Aston* (1985) 39 Cal.3d 481, 492 [216 Cal.Rptr. 771, 703 P.2d 111].)

Finally, when language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. (*People* v. *Garfield* (1985) 40 Cal.3d 192, 200 [219 Cal.Rptr. 196, 707 P.2d 258]; *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 145 [197 Cal.Rptr. 79, 672 P.2d 862]; see *People* v. *Reed* (1982) 135 Cal.App.3d 149, 153 [185 Cal.Rptr. 169].) Here, one plausible construction of section 667.7 and the one most favorable to defendant, is that it refers to robberies involving *the use of* a deadly weapon. We thus adopt this construction. (*Ibid.*)

██ We therefore hold the pertinent provision of section 667.7 applies to prior prison terms served for robberies involving *the use of* a deadly weapon. We have no occasion to consider—and we expressly refrain from deciding—whether "use" refers only to personal use by the defendant or whether it includes use by others. (But see *People* v. *Piper* (1986) 42 Cal.3d 471 [229 Cal.Rptr. 125, 722 P.2d 899].)

██ The next question is, what is meant by "use"? Does it connote more than merely being "armed"? We hold it does.

██ In considering the meaning of the term "use" we apply the " 'well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts.' " (*In re Jeanice D.* (1980) 28 Cal.3d 210, 216 [168 Cal.Rptr. 455, 617 P.2d 1087], quoting

*City of Long Beach* v. *Payne* (1935) 3 Cal.2d 184, 191 [44 P.2d 305]; see *People* v. *Weidert* (1985) 39 Cal.3d 836, 845-846 [218 Cal.Rptr. 57, 705 P.2d 380].)

 Before the enactment of section 667.7 in 1981 (Stats. 1981, ch. 1108) it was established that in the context of sentence enhancements for weapons the term "use" connoted something more than being armed. In *People* v. *Chambers* (1972) 7 Cal.3d 666 [102 Cal.Rptr. 776, 498 P.2d 1024] our Supreme Court noted that "By employing the term 'uses' instead of 'while armed' [in section 12022.5] the Legislature requires something more than merely being armed." (P. 672.) The *Chambers* court explained that " 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' [Citation.]" (*Ibid.*) By employing the term "use" in section 667.7 in the weapons enhancement context, the Legislature is presumed to have used it in the sense it had been previously understood—as meaning "more than merely being armed." (*Ibid.*; *Jeanice D., supra,* 28 Cal.3d at p. 216.)

 Here, the only evidence on the question whether the 1980 robbery involved the use of a deadly weapon consisted of defendant's admission that he was *armed.* This evidence is insubstantial as a matter of law to show *use* of a deadly weapon. Consequently, the prison term attributable to the 1980 robbery may not be counted for purposes of habitual criminal status under section 667.7. Since the statute requires proof of two specified prison terms, and only one was proved, habitual criminal status was erroneously imposed. We must therefore reverse the habitual criminal finding.

II*

. . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment of conviction is affirmed. The finding of habitual offender status is reversed. The sentence previously imposed is vacated and the cause is remanded to the trial court.

Regan, Acting P. J., concurred.

EVANS, J.—I concur in the judgment and the reasoning in both the published and unpublished portions of the opinion.

---

*See footnote *ante,* page 599.

The proof or lack thereof offered by the People to establish the prior prison terms for crimes enumerated in Penal Code section 667.7, for habitual offender enhancements, compels my concurrence. The defendant was allowed to simply admit his prior prison sentence for robbery, "while armed," and admitted no more as to that offense, nor did the People offer more with reference to the armed allegation. Had the People chosen to establish the circumstances of the presence of the firearm during the robbery, it may well have fallen into the category of circumstances described by the California Supreme Court in *People* v. *Chambers* (1972) 7 Cal.3d 666 [102 Cal.Rptr. 776, 498 P.2d 1024], and would have sufficed for purposes of the habitual offender statute. In *Chambers,* the court also stated, "Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' [Citation.] The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that 'uses' be *broadly construed.*" (P. 672, italics mine.)

In order to "broadly construe" the terms involved, i.e., "while armed" or "personally uses," the circumstances surrounding the presence of the firearm, absent an admission of use, must be established; in this instance, the proof was not sufficient to invoke the habitual offender enhancement and must therefore be set aside.

I write separately to say that I would remand the matter to the trial court for further proceedings to permit the establishment of the circumstances of the armed allegation involved in one of the prior prison terms for purposes of sentencing, if possible; if the circumstances then indicate a possession of something more than a "bare potential for use" to impose the enhancement. If the proof does not meet that standard, the enhancement for the habitual criminal status must be stricken. In all other respects, I concur in the majority opinion.

Appellant's petition for review by the Supreme Court was denied June 17, 1987.