Filed 11/6/14  P. v. Stiltner CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064585 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE329332) |
| CHARLES STILTNER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lantz Lewis, Judge.  Affirmed.

Cynthia Ann Grimm, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Julie L. Garland, Assistant Attorneys General, Barry Jay Carlton and Kristen Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Charles Stiltner of assault with a deadly weapon, a vehicle (Pen. Code,[1] § 245, subd. (a)(1); count 1) and felony hit and run causing injury (Veh. Code, § 20001, subd. (a); count 2). It found true allegations that as to count 1, Stiltner personally used a dangerous and deadly weapon within the meaning of section 1192.7, subdivision (c)(23). The court suspended imposition of sentence and placed Stiltner on three years formal probation. Stiltner contends his convictions should be reversed due to the prosecutor's prejudicial misconduct occurring during closing arguments, which violated his constitutional rights to a fair trial, to present a defense, and to due process of law. Specifically, he argues the prosecutor referred to facts not in evidence, improperly vouched for the victim's credibility, argued irrelevant law and policy, and misstated the law as to the burden of proof. We conclude that the majority of Stiltner's claims are forfeited by counsel's failure to object and request jury admonitions; but even if Stiltner had preserved all of his claims by appropriate objections, the prosecutor's remarks do not constitute misconduct. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2013, Steven Barraclough, who was also a military reservist, was working as a private security guard and patrolling apartment complexes, including the Terrace View Mobile Estates. Barraclough was uniformed and in a marked security patrol vehicle, and he was legally armed. At about 11:20 p.m., he noticed a white vehicle parked in the Terrace View Mobile Estates parking lot and approached it on foot,

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

signaling for the occupant, who he recognized as Stiltner, to roll down the passenger window.  Barraclough immediately noticed a cloud of smoke smelling of marijuana exit from the vehicle, and he began to engage in casual conversation with Stiltner, asking him how it was "going" and what he was "up to."  Stiltner told Barraclough he had been in the manager's house and was going home.  Barraclough asked Stiltner to leave the vehicle parked because Barraclough believed him to be under the influence of drugs.  Stiltner, in an "aggressive tone," told Barraclough he was going to drive home.  Barraclough started to move to the other side of the vehicle, and was in front of it when Stiltner accelerated and hit Barraclough with the front bumper just below Barraclough's knees.

Barraclough ended up on the vehicle's hood, with the upper half of his body lifted up.  He drew his weapon, pointed it at Stiltner and yelled at Stiltner to stop.  Barraclough rolled off the side of the vehicle and landed off balance on his feet.  Stiltner drove away fast.  Barraclough called his dispatch and returned to his vehicle to follow Stiltner, who drove to his trailer (No. 67) and entered it.  Barraclough called 911.

Deputy sheriffs dispatched to the scene took photographs of Barraclough and contacted Judy Stiltner in trailer No. 67, who would not allow the deputies inside to search.  A deputy sheriff also took photographs of a white vehicle parked outside the trailer, which had scuff marks on the right front driver's side.  Barraclough had a new scuff mark on his left boot, white marks on his holster, and he sustained a cut to the knuckle of his thumb.

During the prosecutor's closing argument, Stiltner's counsel, Paul Rodriguez, asserted four objections, which the trial court overruled.  The first objection was on the

3

stated ground of "prosecutorial error," and was made after the prosecutor remarked on Barraclough's cross-examination as follows: "[Prosecutor]: I'm sure you were all watching when we finally reached a point when Mr. Rodriguez was able to start some of his questions with 'Isn't it true that . . . that it actually happened like this; that he actually walked up banging on his window with his flashlight; that he actually demanded that Mr. Stiltner get out of the car and cursed at him.' [¶] And I'm sure you were watching the witness the same as I saw, and saw a genuine look of surprise on his face, a genuine look of confusion." After this objection, the trial court stated to defense counsel: "I'll allow you to make a record. In terms of the record, do you want to make a motion now at sidebar or just note this on the record?" Counsel responded, "I'll make it after."

The next objection was again made on grounds of "prosecutorial error," to the prosecutor's discussion of Barraclough's assertedly inconsistent statements about where his body hit Stiltner's car: "[Prosecutor]: Maybe your notes are better than mine—where [defense counsel] brought out something that was theoretically inconsistent with one of those prior statements. And it was at the previous hearing [Barraclough] had testified that the portion of his legs, I suppose, or body that was on top of the car was from the waist down, but that here in court he testified that it was from, I believe he said, the top of his cargo pants, the top of his thighs down. That's it. That was the glaring inconsistency of those statements. [¶] Now, maybe it's just the way I'm shaped or lack of anatomy knowledge. I can barely tell the difference between the waist or top of somebody's thigh."

4

Defense counsel's next objection was made to the prosecutor's remarks about what Barraclough did when he saw Stiltner: "So [Barraclough] does what he thinks is best. Maybe not what you would have done, maybe not what I would have done but what he thought was best. He told him, 'Just leave the car here and walk.' [¶] But Mr. Stiltner was insistent. Can we picture Mr. Stiltner being insistent in wanting to drive and get out of there? Sure. And realize that the person that you see sitting here today, Mr. Stiltner, does not appear how he would have appeared on that date. You see a person who's dressed up, a suit and tie." Defense counsel objected on grounds the statements were irrelevant or "improper."

Defense counsel's final objection was made on grounds the prosecutor misstated the evidence, when the prosecutor said: "Of course, just hearing the testimony is one thing. We want to have some amount of corroborating evidence, right? It's difficult in these situations. When it's this late at night, you're not necessarily going to have a witness. In this country, we don't cover every pole with security cameras to see what's going to happen. And when you're talking about a low-speed impact like this, you are not necessarily going to see dents, damage, serious—" After the court overruled defense counsel's objection, it admonished the jury, "Ladies and gentlemen, you're the determiners of what the evidence is."

The prosecutor finished his closing argument, and the court held proceedings on the matter outside the jury's presence:

"The Court: Mr. Rodriquez, I asked you to hold off just so that we didn't totally disrupt the argument of Mr. Watkins. But your objections have been noted on the record.

I didn't give you a chance to follow through, but they have been noted in a timely fashion on the record. [¶] Would you like to be heard further?

"[Defense counsel]: Yes. Your honor, I noted three separate occasions where the prosecutor vouched for the evidence in this case. First statement: 'I felt he was earnest,'[2] when speaking about the testimony about Barraclough . . . [¶] The second statement that the prosecutor stated: 'I can barely tell a difference between those two statements,' in reference to the impeachment that we went through with Mr. Barraclough and my cross-examination. That's vouching for the evidence and for Mr. Barraclough as well. [¶] Third statement: 'That's not what I would have done,' in reference to what Mr. Barraclough did that night. [¶] . . . [¶] On three separate occasions, the prosecutor vouched for the evidence, and that has an effect on the jury, and I'm asking for a mistrial at this point because, on three separate occasions, the prosecutor is telling them what he thinks they should be thinking, what he thinks the evidence shows, and what he thinks or who he thinks is credible in this case. [¶] Additionally, the reference to my client being dressed as he is today has absolutely no relevance to the case, and he argued that fact today, and in my mind, it raised the question as to my client's duty to take the stand and explain himself. I feel that that reference raises a specter of, at least in the jurors' mind, as to why Mr. Stiltner did not testify, that somehow he is covering up, that he is presenting a false image of himself today, and that, I think, has reasons for a mistrial, as

[2]   This was a reference to the prosecutor's remark about Barraclough's demeanor on the stand: "[T]here was something very earnest about him, some way that he seemed to be trying very hard to listen to the questions and give thoughtful answers." Defense counsel did not object to this particular statement at the time it was made.

6

well.  [¶]  So for all those stated reasons, I'm asking for a mistrial.  At the very least, the court should instruct the jury or give a clarifying instruction to them that neither party can vouch for the evidence . . . ."  The trial court pointed out that defense counsel's first objection was to the prosecutor's statement about Barraclough being confused, not to the "earnest" comment, and it described its own notes concerning defense counsel's objections.

After hearing from the prosecutor, the trial court denied defense counsel's mistrial motion, explaining:  ". . . I have a different impression of what vouching is than you, Mr. Rodriguez.  Vouching to me, and especially in argument, would mean that I know something you don't know.  [¶]  And it appears to me that [the prosecutor] used a method of argument that said, 'Here's what happened, and here's my assessment of it, and you should adopt my assessment of it.'  I don't believe he was saying, 'Listen, I talked to Mr. Barraclough, and I know he's an earnest guy.'  [¶]  He depended on observations in the courtroom.  [¶]  I don't believe it's improper.  I was a little irritated at you for constantly interrupting because I don't believe that's improper argument at all.  I think it's quite proper.  [¶]  He may have personalized it, but he didn't add ingredients.  He referred to an earnest look on his face.  That's his right to say, 'Did you see what I saw?  Here was somebody who was shocked.  Did you see what I saw?  . . .'  [¶]  And in terms of relevancy objections, there's some latitude in argument.  I don't believe there was any prejudicial evaluation in terms of how Mr. Stiltner looks today or any prejudice in terms of telling the jury that there's not much distinction between the waist and the upper thigh."

7

Stiltner filed this appeal.

## DISCUSSION

### I. *Legal Principles and Appellate Standard of Review*

" ' " 'A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.' [Citation.] When a claim of misconduct is based on the prosecutor's comments before the jury, as all of [the] defendant's claims are, ' "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." ' [Citation.] To preserve a claim of prosecutorial misconduct for appeal, a defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument. [Citation.]" [Citation.] A failure to timely object and request an admonition will be excused if doing either would have been futile, or if an admonition would not have cured the harm.' " (*People v. Jackson* (2014) 58 Cal.4th 724, 762, quoting *People v. Linton* (2013) 56 Cal.4th 1146, 1205.)

Reversal for prosecutorial misconduct is called for only when, after reviewing the totality of the evidence, we can determine it is reasonably probable that a result more favorable to the defendant would have occurred absent the misconduct. (*People v. Tully* (2012) 54 Cal.4th 952, 1011; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

8

II. *Claim That the Prosecutor Argued Facts Not In Evidence*

Stiltner contends the prosecutor improperly argued several facts not in evidence or appealed to the jury's passion and emotions. Stiltner refers to statements by the prosecutor concerning Barraclough and what portion of his body hit the hood of Stiltner's car, Barraclough's decision to tell Stiltner to leave his car, Stiltner's appearance on the night in question as being different from that during trial, Stiltner's marijuana use, Stiltner's intent in driving away, whether there were witnesses to the incident or cameras directed on the area, and whether the incident was a "low-speed impact." As to one of these instances—Stiltner's intent to "drive and get out of there"—Stiltner contends the prosecutor referred to a matter that had been stricken by the trial court during trial.[3]

It is true that " ' "[s]tatements of facts not in evidence by the prosecuting attorney in his argument to the jury constitute misconduct." ' " (*People v. Linton*, *supra*, 56 Cal.4th at p. 1207; see also *People v. Lopez* (2013) 56 Cal.4th 1028, 1073.)[4] However,

---

[3]     We agree with the People that this latter claim is meritless. The court sustained a speculation objection to *Barraclough's answer* to the prosecutor's question in which Barraclough characterized Stiltner's demeanor on the night in question. As we explain, it is the prosecutor's province to urge whatever conclusions can be drawn from the evidence, so the prosecutor's characterization of Stiltner as wanting to " 'drive and get out of there' " is a fair inference from the evidence.

[4]     "In [*People v. Hill* (1998) 17 Cal.4th 800, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13], the Supreme Court explained that referring to facts not in evidence 'is "clearly . . . misconduct" [citation], because such statements "tend [ ] to make the prosecutor his own witness—offering unsworn testimony not subject to cross-examination. It has been recognized that such testimony, 'although worthless as a matter of law, can be "dynamite" to the jury because of the special regard the jury has for the prosecutor, thereby effectively circumventing the rules of evidence.' [Citations.]" [Citations.] "Statements of supposed facts not in evidence . . . are a highly

defense counsel did not object on this specific ground when given the opportunity to make his record on the issue.  (Accord, *People v. Valencia* (2008) 43 Cal.4th 268, 281 [defense counsel's argument that prosecutor engaged in improper "paraleipsis" (stating one thing but suggesting exactly the opposite to plant a suggestion that defense counsel would be deceptive), was not cognizable on appeal because defendant's only objection to these comments was on grounds the prosecutor misstated the law].)  When the trial court permitted defense counsel to assert his objection, it was incumbent on counsel to make *specific* objections to the prosecutor's points and ask for admonishments that the jury disregard whatever arguments counsel deemed were improper.  (See *Valencia*, at p. 283 [rejecting People's claim of forfeiture because "defendant adequately objected to the [prosecutor's] comments *on the ground asserted on appeal*," italics added]; *People v. Linton*, at p. 1205.)  Having failed to object on grounds the prosecutor referred to facts not in evidence, and having failed to object whatsoever to certain of the challenged statements,[5] we consider this particular claim of prosecutorial misconduct forfeited.

Even if we did not find a forfeiture, we would conclude the prosecutor's challenged statements cannot be characterized as referring to unproven facts, and were not misconduct.  A prosecutor is free to give an opinion on the state of the evidence and

---

prejudicial form of misconduct, and a frequent basis for reversal." ' "  (*People v. Caldwell* (2013) 212 Cal.App.4th 1262, 1271, quoting *People v. Hill*, at p. 828.)

[5]    Given the trial court's offer to permit defense counsel to make his record after the prosecutor's closing argument, we do not fault defense counsel for withholding his objections when the prosecutor made his statements.  However, counsel still had an obligation to identify the assertedly improper statement and assert a specific objection to it at the time the trial court permitted him to make his record.

has " ' " 'wide latitude' " ' " to comment on its quality and the credibility of witnesses as long as it is a fair comment on the evidence and reasonable inferences or deductions therefrom. (*People v. Bonilla* (2007) 41 Cal.4th 313, 336-337; see *People v. Martinez* (2010) 47 Cal.4th 911, 957 [prosecutors are allowed " 'a wide range of descriptive comment' " and their " ' " 'argument may be vigorous as long as it amounts to fair comment on the evidence' " ' "].) Courts "accord counsel great latitude at argument to urge whatever conclusions counsel believes can properly be drawn from the evidence." (*People v. Cash* (2002) 28 Cal.4th 703, 732.)

We have reviewed each of the prosecutor's comments challenged by Stiltner and conclude they are fair comments on the evidence, draw reasonable inferences from the evidence, or are not reasonably interpreted in the manner Stiltner urges. For example, the prosecutor's argument that he could not tell the difference between someone's waist and the top of someone's thigh was a fair comment concerning Barraclough's memory as to where his body hit Stiltner's vehicle, minimizing the inconsistency in Barraclough's testimony. The prosecutor's statement that Barraclough did "what he thinks is best . . . maybe not what I would have done . . . " is likewise permissible argument within the prosecutor's wide latitude concerning Barraclough's thought process in asking Stiltner to leave the car parked and moving in front of it. The prosecutor's statement about Stiltner "smoking marijuana" was a fair deduction from the evidence that a cloud of marijuana-smelling smoke exited Stiltner's car when he rolled down the window. It was also reasonable to infer that Stiltner was not wearing a business suit on the night in question, while sitting in his car late at night in a trailer park, smoking marijuana. Likewise, the

11

prosecution's characterization of Stiltner as "wanting to drive and get out of there" and that the incident was a "low-speed impact" is fairly inferred from Barraclough's description of the incident, and Barraclough's relatively minor injury. And when the prosecutor stated "there were no witnesses," he was referring to other eyewitnesses to Stiltner's act of driving into Barraclough. Nothing about these statements appealed to emotion over reason, or contained " ' "inflammatory rhetoric that divert[ed] the jury's attention from its proper role, or invite[d] an irrational, purely subjective response." ' " (*People v. Redd* (2010) 48 Cal.4th 691, 742.) In sum, we perceive nothing about the prosecutor's statements and argument as referring to facts not in evidence.

### III. *Claim of Improper Vouching*

Stiltner contends the prosecutor improperly vouched for Barraclough's credibility, and also suggested to the jury it should accept the prosecutor's credibility assessment, when he characterized Barraclough's demeanor as "earnest," Barraclough's answers as "try[ing[ to give the most accurate answer he possibly could," and Barraclough's reaction to certain defense questioning: "I'm sure you were watching the witness the same as I saw, and saw a genuine look of surprise on his face, a genuine look of confusion." Stiltner argues these statements were "personal assurances of [Barraclough's] veracity" and infringed on his right to have the jury make an independent judgment of Barraclough's credibility.

We reject the claim. In *People v. Bonilla*, *supra*, 41 Cal.4th 313, the California Supreme Court addressed a claim of improper vouching. It stated: "It is misconduct for prosecutors to bolster their case 'by invoking their personal prestige, reputation, or depth

12

of experience, or the prestige or reputation of their office, in support of it.' [Citation.] Similarly, it is misconduct 'to suggest that evidence available to the government, but not before the jury, corroborates the testimony of a witness.' [Citation.] The vice of such remarks is that they 'may be understood by jurors to permit them to avoid independently assessing witness credibility and to rely on the government's view of the evidence.' [Citation.] However, these limits do not preclude all comment regarding a witness's credibility. ' " '[A] prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom.' " ' [Citation.] '[S]o long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the "facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief," her comments cannot be characterized as improper vouching.' " (*Bonilla*, at pp. 336-337; see also *People v. Redd*, *supra*, 48 Cal.4th at p. 740 [" 'A prosecutor may make "assurances regarding the apparent honesty or reliability of" a witness "based on the 'facts of [the] record and the inferences reasonably drawn therefrom.' " ' "].)

Here, none of the prosecutor's remarks concerning Barraclough's veracity brought in personal knowledge of facts outside the record suggesting that Barraclough was telling the truth, nor did the prosecutor suggest he had evidence only available to the People. (Compare *People v. Blacksher* (2011) 52 Cal.4th 769, 838 [improper for prosecutor to imply he had evidence that the defendant was not insane, but did not want to bore the jury or waste its time with four expert witnesses]; *People v. Boyette* (2002) 29 Cal.4th 381,

13

452 [misconduct where the prosecutor suggested "she had evidence in her possession that supported her line of questioning, but simply chose not to present it in the interest of saving jury time"].)  The prosecutor's remarks were not improper because they did not refer to any facts or circumstances beyond the jury's own ability to perceive Barraclough's demeanor on the stand.  (Accord, *People v. Williams* (1997) 16 Cal.4th 153, 256-257 [prosecutor's comments about why an accomplice should be believed suggested reasonable inferences the jury could draw that might lead it to credit the accomplice's testimony and did not invite jury to abdicate its responsibility to examine for itself whether the accomplice should be believed].)  "Prosecutorial assurances, *based on the record*, regarding the apparent honesty or reliability of prosecution witnesses, cannot be characterized as improper 'vouching,' which usually involves an attempt to bolster a witness by reference to facts *outside* the record."  (*People v. Medina* (1995) 11 Cal.4th 694, 757.)  Stiltner has not shown misconduct based on the challenged remarks.

IV.  *Alleged Prosecutorial Misconduct in Arguing Irrelevant Law and Policy*

During his closing argument, the prosecutor discussed the count 1 charge of assault with a deadly weapon, and specifically what it meant for an act to "directly and probably result in the application of force to a person."  He remarked:  "I don't think [it's] particularly clear.  What it's essentially getting at, this question of application of force, it's simply touching in a harmful or offensive manner.  It's the same definition they give for a battery."

The prosecutor also stated that the jury was to decide whether the injury to Barraclough's thumb constituted injury within the meaning of the count 2 crime of hit-

14

and-run with injury. In part, the prosecutor stated: "The question, I suppose, is whether or not that, I'll call it, damage to [Barraclough's] thumb constitutes injury under this section. [¶] I'll just note a couple of things on that. There is another section that can apply if somebody commits a hit-and-run that causes what's called permanent or serious injury or death. *That's obviously not the case here.* This section is reserved for less serious or minor injuries like you have in the case. So that's something to keep in mind." (Emphasis added.) The prosecutor continued: "The other thing that I think is relevant is when you look at the third element. This is that knowledge element that I was mentioning: that the defendant knew, or should have known, given the way the accident happened, that somebody was probably hurt. And that's the entire policy behind having a code like this, right? We want people, after an accident, to stop whether or not it's their fault."

Stiltner contends the prosecutor's discussion of the law and policy regarding the offense of hit-and-run causing death or serious permanent injury, and his mention of battery, was misconduct because it invaded the province of the trial court to instruct the jury on the law. Stiltner also maintains the argument, because it was not based on any legislative history presented to the jury, constituted testimony regarding facts outside of the evidence, thus violating his rights to a fair trial and confrontation.

We are not persuaded. Stiltner did not object to these remarks at the time they were made, and his claim is therefore forfeited. The challenged remarks were made before the trial court invited counsel to make his record later outside the jury's presence, and thus there was nothing to indicate it would have been futile for Stiltner's counsel to

15

assert objections in a timely manner. Because the court had not yet ruled on any objection to the prosecutor's closing argument, this was not an instance of a party submitting to the authority of an erroneous, adverse ruling and "endeavoring to make the best of a bad situation for which he was not responsible." (*People v. Calio* (1986) 42 Cal.3d 639, 643; see also *People v. Riggs* (2008) 44 Cal.4th 248, 289.) We decline to apply the futility exception when Stiltner has not pointed to anything in the record suggesting that an objection to the alleged misconduct would have been futile, or that the prosecutor's comments were so outrageous or inherently prejudicial that an admonition would not have cured the prejudice. (See *People v. Boyette*, *supra*, 29 Cal.4th at p. 432; *People v. Dennis* (1998) 17 Cal.4th 468, 521; *People v. Fauber* (1992) 2 Cal.4th 792, 821.) Furthermore, when the court finally gave Stiltner the opportunity to make his record as to alleged prosecutorial misconduct, he did not mention these statements, much less argue that the prosecutor asserted irrelevant law and policy.

Setting aside Stiltner's forfeiture of these claims, we would conclude they are meritless in any event. Regarding the argument concerning hit-and-run with serious bodily injury, it is plain from the prosecutor's comment—"that's obviously not the case here"—that he was not purporting to instruct the jury on the law applicable to the case. The statements cannot be reasonably construed as misstating the applicable law (*People v. Gray* (2005) 37 Cal.4th 168, 217) or reciting facts not in evidence. (See *People v. Linton*, *supra*, 56 Cal.4th at p. 1207.) We reach the same conclusion as to the prosecutor's mention of the crime of battery. Even if the prosecutor's statements constituted misinstruction on the law, the trial court eliminated any possibility of

16

prejudice when it instructed the jury: "You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law during their arguments conflict with my instructions, you must follow my instructions." Absent any contrary indication, we presume the jury followed this instruction. (See *People v. Gray*, at p. 217.)

V. *Alleged Prosecutorial Misconduct as to the Burden of Proof*

In defense counsel's closing argument, counsel posited that Barraclough was lying because the physical evidence assertedly did not match his story and he had a personal interest in keeping his job; he argued that being a security guard with a "fake badge" and uniform, or being in the military, did not make Barraclough a "truth teller." The entirety of the prosecutor's rebuttal was to point out that it would not have been reasonable for Barraclough to call the police and make up a story about Stiltner driving at him and him having to pull his gun, when Barraclough was the only person involved and there were no other witnesses.[6] The prosecutor reminded the jury that one witness's testimony was

_____

6      In part, the prosecutor said: "Essentially, you're to believe that there was no collision. Mr. Stiltner simply drove the car back home, parked, walked inside just fine. There were no witnesses. There's no issues, but that Mr. Barraclough then panicked, that he had just let him do that and needed to cover for this situation that nobody knows about, and the way he did that was by calling the police and making up an elaborate story about being hit by a car, and then maybe took some time to scuff himself up a bit and do something to his thumb, things along that line. [¶] Does that make sense? We're talking about when there's two reasonable interpretations, is that a reasonable interpretation? Do you buy that in the slightest, that he would do any of this? What's a good day for that guy's boss? When nothing happens, right? If there's no reports that anything has gone wrong. What's a bad day for that boss? The employee comes around and says, 'So, by the way, I had a little run-in with a guy today, hit me with his car. I had to pull my gun. The police are investigating.' That's a bad day for his boss, right? [¶] If he lets that guy

17

sufficient if it believed that witness, and "now it's simply a matter of whether or not you did believe him, or do you believe this absurd alternative reality where he made the whole thing up for no good reason? [¶] I submit to you that what's been presented to you is not reasonable doubt. It's not reasonable. If the case was proven, I'm going to ask you to turn in a guilty verdict, again, as to both counts."

Stiltner contends the prosecutor misstated the law and lessened the proof beyond a reasonable doubt standard when he made his rebuttal remarks concerning defense counsel's attack on Barraclough's truthfulness. According to Stiltner, these comments "in effect, told the jurors that Stiltner needed to prove Barraclough lied in order for the jury to find Stiltner not guilty, and even if the jurors were uncertain as to whether Barraclough was lying, that was still insufficient proof of reasonable doubt." Stiltner characterizes the prosecutor's argument as an attempt by the prosecution to absolve itself of its burden to prove guilt beyond a reasonable doubt, and encouraged a verdict based on a misstatement of the law.

In making this argument, Stiltner sets out virtually all of the prosecutor's rebuttal argument (leaving out one introductory paragraph), spanning approximately three full pages of the reporter's transcript. He concedes his defense counsel did not object at any point during the prosecutor's rebuttal, but maintains his counsel's silence was not a forfeiture as objections would have been futile based on the court's prior rulings, and

_____

drive home and nobody sees it and nobody knows about it, there's not a problem here. He's not going to freak out and call the cops. It's absurd, and that's the point. The alternative you are being presented with is absurd. It's not reasonable. It's not reasonable doubt."

there was "a pattern of prosecutorial misconduct . . . ." We disagree. There is no reason

to conclude the court would not have entertained counsel's objections at some point in the

proceeding, as it did with regard to those made during the People's initial closing

argument. Thus, the normal rules requiring a timely objection apply, as the

circumstances do not rise to the level of the extreme facts in *People v. Hill*, *supra*, 17

Cal.4th 800, on which Stiltner relies to argue futility.[7] We conclude Stiltner forfeited his

claim by failing to contemporaneously object to these comments in the trial court and

seek a jury admonition. (*People v. Parson* (2008) 44 Cal.4th 332, 359; *People v. Bonilla*,

*supra*, 41 Cal.4th at p. 336.)

Turning to the merits in any event, on this record, the prosecutor's remarks were

proper rebuttal to defense counsel's comment on Barraclough's credibility and

truthfulness, a pivotal issue. (See *People v. Tully* (2012) 54 Cal.4th 952, 1016; *People v.*

*Daya* (1994) 29 Cal.App.4th 697, 715 [prosecutor is justified in making comments in

rebuttal that are fairly responsive to argument of defense counsel and are based on the

---

[7] *People v. Hill* was an "extreme case" in which the trial atmosphere was "poisonous" and the misconduct "pervasive," making continual objections futile and counterproductive to his client. (See *People v. Riel* (2000) 22 Cal.4th 1153, 1212-1213, citing *Hill*, *supra*, 17 Cal.4th at pp. 821, 826.) Indeed, the misconduct was monumental, ranging in type from misstatements of the evidence that rose to "outright falsehoods," to misstatements of law to sarcastic comments about the defendant and defense counsel. Defense counsel had "repeatedly but vainly objected to try to curb" the "extreme" and "pervasive" misconduct. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 501, 502.) Our Supreme Court concluded under such circumstances it would have been futile and counterproductive to continue making objections. (*Hill*, 17 Cal.4th at p. 821.) The prosecutor's remarks in this case do not establish " ' " 'a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process" ' " ' " nor did they render the trial fundamentally unfair by involving the use of reprehensible methods. (*Hill*, at p. 819; accord, *Hillhouse*, at pp. 501-502.)

19

record].)  We are confident the jury would understand the prosecutor's remarks as legitimate comment on the prosecutor's perception of the weakness of defense counsel's attack on Barraclough's credibility, and the strength of the People's case.  These are all permissible arguments.

Finally, the prosecutor's remarks are not reasonably interpreted as lessening the beyond a reasonable doubt standard of proof or the People's burden.  The trial court had already instructed the jury that the defendant was presumed innocent and the prosecutor was required to prove a defendant guilty (and the deadly weapon allegation) beyond a reasonable doubt, and to ignore any contrary statements by counsel.  The prosecutor at the outset of his closing argument reminded the jury that, "It's my responsibility to prove each of those elements beyond a reasonable doubt."  We cannot agree the prosecutor's comments suggested the jury should decide the case on a standard less than proof beyond a reasonable doubt, and, as stated, the jury was properly instructed on the standard of proof.  There is thus no reasonable likelihood the jury construed the prosecutor's remarks as suggesting a lesser standard of proof applied; that the burden of proof was not guilt beyond a reasonable doubt.  (Accord, *People v. Edwards* (2013) 57 Cal.4th 658, 734, 741-742.)

Having deemed most of Stiltner's claims of misconduct forfeited—and concluding the challenged statements were not misconduct in any event—we reject Stiltner's remaining arguments: that he suffered ineffective assistance of trial counsel (asserted in his reply brief), there was cumulative error, he suffered prejudice that was not harmless beyond a reasonable doubt, the asserted misconduct rendered his trial unfair or denied

20

Stiltner his federal due process, or the *Chapman v. California* (1967) 386 U.S. 18 standard of error applies.

DISPOSITION

The judgment is affirmed.



O'ROURKE, J.

WE CONCUR:

McDONALD, Acting P. J.

AARON, J.